IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DILKHAYOT KASIMOV, | : Civ. No. 1:24-CV-1352 |
| | : |
| Petitioner, | : |
| | : (Judge Kane) |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| M. ARVIZA, WARDEN, FCI | : |
| ALLENWOOD MEDIUM | : |
| | : |
| Respondent. | : |

## REPORT AND RECOMMENDATION

I.    Statement of Facts and of the Case

A. Introduction

The petitioner, Dilkhayot Kasimov, a federal inmate incarcerated in the Bureau of Prisons ("BOP"), has petitioned for the writ of habeas corpus, asking us to examine the results of a prison disciplinary hearing that led to the forfeiture of good time and other privileges.[1]  We previously recommended that the court remand this matter to the BOP for further development of the record because we could not conclude that Kasimov was afforded the full panoply of procedural protections.[2]  The

---

[1] Doc. 1.
[2] Doc. 11.

government objected to these findings and filed additional evidence purporting to address evidentiary gaps.[3]  In light of that new evidence, the District Court recommitted the matter to this court for further consideration.[4]  After review, we conclude that there was no violation of the petitioner's procedural due process rights in this matter.  Further, we conclude there was also no substantive due process violation here, and so recommend the petition be denied.

## B. DHO Proceedings

Kasimov is a federal inmate confined at FCI Allenwood Medium in Allenwood, Pennsylvania.[5]  On July 6, 2023, Correctional Officer White drafted an Incident Report, charging Kasimov with violations of codes 224, "Assault without Serious Injury," and 307, "Refusing to Obey an Order."[6]  According to the report, White saw Kasimov repeatedly strike his cellmate with "closed fisted (sic) punches to the upper torso and head [,]" twice ordered Kasimov to stop to no avail, and then administered a two second burst of pepper spray into the cell to stop the

---

[3] Doc. 15.
[4] Doc. 18.
[5] Doc. 1 ¶ 2.
[6] *Id.* ¶ 9.

assault.[7]  According to Kasimov, there was no assault of any kind, and White administered the pepper spray for no reason.[8]  According to Kasimov's cellmate, Jordan Autrey, there was no assault or fight and White deployed pepper spray because when White asked Kasimov to turn over a piece of fishing line he had in the cell, Kasimov slid the line under the door and not through the "wicket."[9]

That same day, Kasimov received a copy of the incident report, which charged him with the violations outlined above.[10]  The Unit Disciplinary Committee ("UDC") held a hearing on July 8, 2023, where Kasimov denied punching anyone, and the UDC referred the report to the Discipline Hearing Officer ("DHO").[11]

The DHO gave Kasimov written notice of the hearing scheduled for July 6, 2023.[12]  Kasimov indicated that he did not wish to have a staff representative or a witness at the hearing.[13]  Kasimov was also given a written statement advising him of his rights more than 24 hours in

---

[7] *Id.*
[8] *Id.* ¶ 14.
[9] *Id.* ¶ 12.
[10] Doc. 1 ¶ 9.
[11] Doc. 9-5 at 3.
[12] Doc. 9-6 at 2.
[13] Doc. 9-8 at 2.

advance of the hearing.[14]  The DHO gave Kasimov five days to gather evidence and then held a hearing on July 12, 2023.[15]

At the hearing, Kasimov denied the charges, stating "I never fought or punched anyone. I didn't do anything wrong. He was my Muslim brother and I would not do that."[16]  Kasimov claims that at the hearing, he requested the DHO view video footage of the incident, which he was not able to obtain and present himself because he was housed in the SHU.[17]  The DHO considered Kasimov's statement, Autrey's statement, White's written report, and documentation attached to that report.[18]  The DHO explained in a sworn statement that while an "inmate has the opportunity to request exculpatory evidence, i.e. medical records and/or the review of surveillance video" and where such a request is made "the DHO is required to document that request in his report [,]" that, here, "Kasimov did not request that [the DHO] review any video footage" and "it is not mentioned in the investigation section of the incident report that

---

[14] Doc. 9-6 at 2.
[15] *Id.*
[16] Doc 1 ¶ 14.
[17] *Id.*
[18] *Id.*

Inmate Kasmiov requested the video to be reviewed."[19]

Based on the weight of the evidence, the DHO found Kasimov had committed "Assault without Serious Injury," but not "Refusing to Obey an Order."[20]  The DHO relied on the information contained in White's report and the fact that Kasimov presented "no substantive evidence to support that you did not assault another inmate."[21]  The DHO found White's report more credible than the testimony of two inmates, reasoning that "[i]nmates often support other inmates defenses to aid in avoiding culpability for their actions.  It does not make sense for staff to fabricate a false report as they gain nothing by doing so."[22]  The DHO sanctioned Kasimov with a loss of 27 days good conduct time, as well as a 30-day disciplinary segregation and a six-month loss of phone privileges, reasoning that any assault threatens the health, safety, and welfare of inmates and staff, and that such incidents can create larger disturbances making it difficult to provide security.[23]  He noted that the sanctions were imposed to make clear to Kasimov that he would be "held

---

[19] Doc. 14-2, ¶¶ 9, 14, 22, 24.

[20] Doc 9-6 at 4.

[21] Doc. 1 ¶ 14.

[22] Doc. 9-6 at 4.

[23] *Id.*

responsible for [his] actions/behavior at all times."[24]  The DHO explained that the Prison Litigation Reform Act mandated the loss of good conduct time, the disciplinary segregation was imposed as punishment for the act, and the loss of phone time was imposed to deter future misconduct.[25]

Kasimov filed a series of administrative appeals, pursuing them to exhaustion before filing the instant petition.[26]  Kasimov alleges that the DHO's failure to consider the surveillance video violated his procedural due process rights, and that the evidence at the administrative hearing was insufficient, rendering the punishments imposed a violation of his substantive due process rights.[27]  The petition has been fully briefed and is now ripe for resolution.[28]  This court initially recommended remand to further develop the record,[29] but, after supplementation of the record by the government,[30] the District Court recommitted the matter to this court to consider if the supplementation sufficiently developed the record to

---

[24] *Id.*

[25] *Id.*

[26] Doc. 9-2 at ¶ 4.

[27] Doc. 1 at ¶¶ 31-47.

[28] Docs. 1, 9, 10.

[29] Doc. 11.

[30] Doc. 15.

reach a conclusion.[31]   We conclude the supplementation was sufficient, and for the reasons set forth below, we now recommend that this petition be denied.

## II.   Discussion

### A. Standards Governing the BOP's Administrative Proceedings

#### (1) Procedural Standards for DHO Hearings

The Supreme Court has explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."[32]   The Court held that prisoners are instead entitled to a specific trio of procedural protections: (1) at least 24 hours advance written notice of the charges, "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are"; (2) an opportunity "to call witnesses and present documentary evidence in his defense" so long as they are not "unduly hazardous to institutional safety or correctional goals"; and (3) a "written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action" so as to "protect the

---

[31] Doc. 18.
[32] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding."[33]

A prisoner in a disciplinary proceeding is also entitled to an impartial tribunal.[34] That requirement is specific to the incident, the prisoner, and the DHO, and "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee."[35]

The BOP has adopted statutory guidelines for inmate discipline procedures, codified at 28 C.F.R. § 541.1 *et seq.* These procedures "substantially track the procedures outlined in *Wolff* . . . [and] in some

---

[33] *Id.* at 563-67.

[34] *Meyers v. Alldredge*, 492 F.2d 296, 305 (3d Cir. 1974) ("[A]t a minimum due process requires an impartial factfinder in prison disciplinary matters involving serious punishments such as good time forfeiture.").

[35] *Id.* at 306; *see also Pisicotta v. N'Diaye,* Civ. No. 21-20573, 2023 WL 3749981 (D. N.J. June 1, 2023) (claim of bias made without evidence did not show partiality); *Lasko v. Holt,* 334 F. App'x 474 (3d Cir. 2009) (same); *Greer v. Hogston*, 288 F. App'x. 797, 799 (3d Cir. 2008) (DHO changing the charging document did not make the DHO personally involved); *Redding v. Holt*, 252 F. App'x 488 (3d Cir. 2007) (claim of bias made without evidence did not show partiality); *Levi v. Holt*, 192 F. App'x. 158, 162 (3d Cir. 2006) (DHO "almost always" holding against prisoners was not evidence of partiality).

respects they go beyond what the due process clause itself requires."[36] The regulations lay out a process for prison staff to follow when they believe an inmate has committed a prohibited act. First, staff must issue an incident report to the inmate and formally begin an investigation.[37] Once the investigation is complete, a UDC reviews its results and can either make a finding (and enter discipline, if appropriate) or refer the incident to a DHO for further consideration.[38] During this review, the inmate is entitled to notice of any proposed violation, to appear before the UDC, to make a statement on the record, and to present evidence.[39]

These regulations also provide inmates with procedural rights before and during a DHO hearing. The inmate has the right to attend the hearing, unless the DHO finds their attendance creates security concerns.[40] The inmate is entitled to receive written notice of charges against him at least 24 hours in advance of the hearing, and to have a full-time staff member provide him assistance or represent him at the

---

[36] *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).
[37] 28 C.F.R § 541.5.
[38] 28 C.F.R § 541.7.
[39] *Id.*
[40] 28 C.F.R. § 541.8(e).

9

hearing.[41]  At the hearing, the inmate may make a statement, present documentary evidence, and request witnesses who, if approved, may testify in person or by written statement.[42]  The DHO has discretion to approve witnesses, but need not permit repetitive or adverse witnesses, and may disallow witnesses if their presence would jeopardize institutional security.[43]  The DHO "will" call witnesses with directly relevant information but may decline to do so for security reasons or where the witness is testifying to information available in investigation materials.[44]

The regulations also set standards for the DHO's decision-making process.  A DHO must consider all evidence presented, base his or her decision on "at least some facts" presented at the hearing, and, where there is conflicting evidence, base the decision on the weight of the evidence.[45] The DHO is obligated to make a written record of the hearing, which need not be verbatim, and deliver it to the inmate.[46]  The record

---

[41] 28 C.F.R. § 541.8(c), (d).
[42] 28 C.F.R. § 541.8(f).
[43] *Id.*
[44] 28 C.F.R. § 541.8(e).
[45] 28 C.F.R. § 541.8(f).
[46] 28 C.F.R. § 541.8(h).

must address whether the inmate was advised of their rights, what evidence the DHO relied on, the DHO's ultimate decision, the sanctions imposed, and the reasons for any sanctions.[47]

Where the record evinces that an inmate has received all the aforementioned protections, procedural due process is typically satisfied.[48]

### (2) Substantive Standards Governing DHO Decisions

The petitioner has also attacked the substance of the DHO decision, arguing that the decision was based on insufficient evidence. The Supreme Court held that in prison disciplinary determinations, "the requirements of due process are satisfied if *some evidence* supports the decision [.]"[49] The Court explained that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

---

[47] *Id.*

[48] *See, e.g., Anamanya v. Rickard,* Civ. No. 3:21-cv-1775, 2023 WL 11983713 (M.D. Pa. Jan. 9, 2023) (upholding disciplinary decision); *Butt v. Moser*, Civ. No. 3:19-cv-159, 2020 WL 2541789 (W.D. Pa. May 19, 2020) (same); *Fiore v. Lindsay*, 336 F. App'x 168 (3d Cir. 2009) (same).

[49] *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added).

evidence."[50]   Notably, the evidence presented in *Hill* "would never be enough to find a defendant guilty of assault in a regular criminal courtroom, yet the Supreme Court held that it was sufficient to satisfy the Due Process Clause."[51]   A DHO's decisions are therefore typically upheld where there is a showing of "some evidence."[52]

Because the standard of review is relatively lenient and does not require exhaustive review, "a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause."[53]   The Supreme Court found "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."[54]

Where "there is some evidence to support the decision of the hearing

---

[50] *Id.*; *Thompson v. Owens*, 889 F.2d 500, 501-02 (3d Cir. 1989).

[51] *Denny v. Schultz*, 708 F. 3d. 140, 146 (3d Cir 2013).

[52] *See Hill*, 472 U.S. at 457; *see also, Denny*, 708 F. 3d. at 145 (3d Cir 2013) (upholding denial of good time credits where the only evidence was contraband found in the petitioner's shared cell); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (explaining that the "some evidence" standard is in addition to, not instead of, the *Wolff* standards); *Sinde v. Gerlinski,* 252 F. Supp. 2d 144 (M.D. Pa. 2003) (circumstantial evidence and indicia of unreliability from prisoner was "some evidence" sufficient to uphold revocation of good time credits); *Thompson*, 889 F.2d 500 (typical chain of custody showing not required to meet "some evidence" standard).

[53] *Denny*, 708 F.3d at 145 (quoting *Hill*, 472 U.S. at 456).

[54] *Hill*, 472 U.S. at 455-456.

12

examiner, the court must reject any evidentiary challenges" by the petitioner.[55]   However, "some evidence" may not be present where the finding of culpability relies on remote probabilities.[56]

## B. This Petition should be Denied.

With the benefit of the supplemented record, we conclude there was no procedural due process violation here.   We also conclude that the petition fails to make out a violation of substantive due process, and so recommend the petition be denied.

### (1) Procedural Due Process

Kasimov does not dispute that he had the opportunity to present evidence and witnesses, and to make his own statement.   He argues that, because he was incarcerated within the SHU without email access, he had no way to access documentary evidence (specifically the surveillance video and the medical report) and for these reasons, he requested that the DHO view the surveillance video.[57]   That request is not documented

---

[55] *Snide*, 252 F. Supp. 2d at 150.
[56] *Compare Cardenas v. Wigen*, 921 F. Supp. 286, 289 n. 4 (E.D. Pa. 1996) (holding that where the evidence showed a one-in-12 chance that the petitioner had committed an offense, that was insufficient for the "some evidence" standard) *with Denny*, 708 F. 3d. at 145 (3d Cir 2013) (contraband in a shared two-prisoner cell was "some evidence" of an individual prisoner's constructive possession of contraband).
[57] Doc. 1 ¶¶ 10, 14 n. 2.

in the records, and Kasimov declined to have a staff representative or witness, who might have corroborated such a request, present.[58]

We previously recommended remand for the limited purpose of determining if more information about the alleged request could be produced, and the government's filings have since satisfied this need. In its objection to our Report and Recommendation, the government included the sworn statement of the DHO in this matter, Mr. David Lupotsky.[59] Therein, Lupotsky states that Kasimov did not request video evidence at the hearing.[60] We conclude this is sufficient to demonstrate no request was made, and so no procedural due process violation occurred here. While the petitioner disputes this conclusion, we reiterate that by declining to have a staff representative present with him at the hearing, Kasimov undermined his ability to effectively dispute what occurred therein. We conclude there was no procedural due process violation here.

### (1) Substantive Due Process

Kasimov also alleges a substantive due process violation. In this matter, the DHO credited White's report as "some evidence" of an

---

[58] Doc. 9-8 at 2.

[59] Doc. 15-2 at 2-5.

[60] *Id.* ¶ 23.

assault.[61]  Kasimov argues the DHO erred, in violation of due process, by failing to credit countervailing evidence.[62]  He points to six pieces of alleged evidence which he argues "undermine" White's statement.[63]  This argument is unavailing.  *Hill* establishes all that is required is a DHO rely on "some evidence."[64]  The *Hill* Court explained that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."[65]  The instruction that the entire record need not be examined necessarily implies that the presence of countervailing evidence is of no moment.

Kasimov cites to the First Circuit case *Cummings v. Hazelwood*, arguing it stands for the proposition that countervailing evidence in the record means a DHO's reliance on a correctional officer's statement alone cannot suffice as "some evidence" of a violation.[66]  In *Cummings*, the correctional officer in question alleged he observed one inmate using a

---

[61] Doc. 1-1 at 3.
[62] Doc. 1 ¶¶40-47.
[63] *Id.* ¶ 43.
[64] *Hill*, 472 U.S at 454.
[65] *Id.* at 455.
[66] Doc. 1 ¶¶44-47.

chokehold on another, but both inmates claimed one inmate lifted the other up by his armpits after a fall, and that what the correctional officer thought was a chokehold was actually a misperception of an innocent action.[67]  The DHO resolved the discrepancy by noting that the inmates had motive to lie, whereas the correctional officer did not, and so credited the officer's version of events.[68]  The First Circuit found that because there was a possibility that all parties were being truthful about their perception of what occurred, a credibility determination was an inappropriate method of resolving the discrepancy, because the actual issue was "the guard's immediate perception" of the situation.[69]

The Hearing Officer here made a similar credibility determination, finding that White had no motive to lie whereas the inmates involved did.[70]  But in this matter, White, Kasimov, and Autrey (Kasimov's cellmate) gave completely different accounts of what happened.[71]

---

[67] *Cummings v. Hazelwood*, No. 22-1087, 2023 WL 5281560 at *2 (1st Cir., May 19, 2023).

[68] *Id.*

[69] *Id.*

[70] Doc. 1 ¶ 14.

[71] Kasimov alleged White pepper sprayed him without motivation, White alleged he witnessed Kasimov punching Autrey and used pepper spray to quell the assault, and Autrey alleged that White demanded an item

Presented with mutually exclusive narratives, the DHO considered motivation in deciding which narrative was most credible. We conclude that consideration was appropriate in these circumstances, which distinguishes this case from *Cummings.* We therefore conclude White's statement shows "some evidence" of assault, the DHO did not err in crediting that statement, and there was no violation of substantive due process here.

## III.    Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the petition be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the

from Kasimov and pepper sprayed Kasimov for not using the "wicket" to deliver that item.  (Doc. 1, ¶¶ 7, 9, 12).

17

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of March, 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

18